FILED
2023 Jul-12 PM 02:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| CHARLES GOODRICH and ALEXANDRA GOODRICH, Plaintiffs, | ) | CIVIL ACTION FILE NO: 2:22-CV-00021-MHH |
| vs. | ) | |
| PACIFIC INDEMNITY COMPANY; Defendant. | ) | |

**DECLARATION OF JERRY RUDOSHKO**

My name is Jerry Rudoshko, and I am over eighteen (18) years of age and competent to testify to the matters stated herein. All of the statements herein are of my personal knowledge, information and belief.

1. I am a Senior General Adjustor handling Pacific Indemnity Company claims, and I have knowledge regarding the claim at issue in this lawsuit.

2. Pacific issued a Masterpiece insurance policy bearing policy number 14945478-01 ("the Policy") to Charles Goodrich and Alexandra Goodrich, insuring the property located at 3305 Dell Road, Mountain Brook, AL 35223 (the "Property"). A true, accurate and correct copy of the Policy is attached as Exhibit "A."

3. The Policy provides up to $3,000,000 of "Dwelling" Coverage. Pacific Policy, Exhibit A, Policy Coverage Summary, p.1.

4. Pacific pays the "reconstruction cost," which is defined as follows in the Policy:

> "Reconstruction cost" means the lesser of the amount required at the time of loss to **repair, replace, or rebuild**, at the same location, your house or any other permanent structure, using like design, and materials and workmanship of comparable kind and quality.

Pacific Policy, Exhibit A, p. B-2 (emphasis added).

5. The Policy provides "Extra Coverages," including coverage for landscaping, which is defined as follows:

> We cover trees, shrubs, plants, and lawns, which are on the grounds of your house and other permanent structures, against certain kinds of perils. These are fire …
>
> We will pay:
> - up to a total of 5% of the amount of coverage for the house at which the loss occurs, … , but
> - not more than $10,000 for any one tree, shrub, or plant.

Pacific Policy, Exhibit A, p. B-7.

6. The maximum landscaping benefit under the Policy is $150,000.

7. The Policy provides "Contents" coverage at "Replacement Cost," which is defined as follows:

> …[W]e will pay the full cost to replace the contents without deduction for depreciation, or the amount required

> to repair the damage, whichever is less, up to the amount of coverage.

Pacific Policy, Exhibit A, p. C-2.

8. The Policy includes the following provisions regarding an insured's duties after a loss:

> **Prepare an Inventory.** [The Insureds] must prepare an inventory of damaged personal property, describing the property in full. It should show in detail the amount insured under this policy and actual amount of the loss. Attach bills, receipts, and other documents to support your inventory.
>
> …
>
> **Proof of Loss.** [The Insureds] must submit [a] signed, sworn proof of loss providing all information and documentation [Pacific] request[s] such as the cause of loss, inventories, receipts, repair estimates and other similar records.

Pacific Policy, Exhibit A, pp. Y-4 and Y-5.

9. This claim involves a fire that occurred at Plaintiffs' home on November 18, 2019.

10. I have reviewed Plaintiffs' Motion for Partial Summary Judgment where Plaintiffs claim they are entitled to be paid (1) $311,989.80 for smoke remediation that was not required and never occurred; (2) the policy limit of $150,000 for landscaping costs that have not been performed or properly documented; and (3) "approximately" $575,000 for contents where the replacement

cost has not been properly documented. This Declaration addresses only those aspects of Plaintiffs' claim.

***<u>Smoke Remediation Bid</u>***

11. On March 19, 2021, Plaintiffs executed a Sworn Statement in Proof of Loss – Dwelling ("Dwelling Proof of Loss").

12. Plaintiffs' Dwelling Proof of Loss included a breakdown of amounts owed, including $311,939.89 described as "Slade LLC – Remediation Bid." [Doc No. 29-4, p. 4].

13. The Slade Remediation Bid included costs associated with smoke and mold remediation for several areas of the Property, including the basement. The Slade Remediation Bid did not provide for smoke or mold remediation for the garage. A true, accurate and correct copy of the Slade LLC estimate, dated April 1, 2020, is attached hereto at Exhibit B.

14. By March 19, 2021, when Plaintiffs submitted the sworn Dwelling Proof of Loss, Plaintiffs had already demolished the entire house.

15. To my knowledge, the smoke and mold remediation proposed by Slade LLC was never performed and the cost was never incurred.

***<u>Plaintiffs' Landscaping Claim</u>***

16. On March 19, 2021, Plaintiffs executed a Sworn Statement in Proof of Loss – Landscaping ("Landscaping Proof of Loss") which set forth the net amount

claimed by Plaintiffs as $150,000 "or the maximum allowed under the policy, whichever is greater." [Doc No. 29-11].

17. The Landscaping Proof of Loss included an estimate for the landscaping at the Property from Southern Scape which totaled $161,351. A true, accurate and correct copy of the estimate is attached hereto as Exhibit C.

18. This estimate provides no information regarding the extent of the damage to the landscaping features or the location of allegedly damaged plants/shrubs/etc.

19. Likewise, the estimate provided no photographs or other evidentiary support for the claimed damages.

20. It has been almost 2 years since Plaintiffs' Examinations Under Oath occurred, and it is my understanding that the house has been rebuilt, yet Plaintiffs have refused to provide specific information or documentation regarding the landscaping work that was performed.

***Plaintiffs' Contents Claim***

21. As part of Pacific's initial investigation into Plaintiffs' claim, Pacific retained Enservio, Inc., a third-party vendor specializing in the adjustment of contents claims, to inventory and appraise Plaintiffs' fire damaged items.

22. On January 14, 2020, less than two months following Plaintiffs' fire loss, Pacific issued the first payment for Plaintiffs' damaged contents. This payment in the amount of $204,463.30 was based on Enservio's content inventory.

23. On January 21, 2020, Plaintiffs wrote to Pacific to dispute the contents valuation contained in Enservio's inventory and the valuation of other damaged items. In this email, Plaintiffs indicated they would "forward a list of items [that] were lost with replacement values for comparison." A true, accurate and correct copy of this email is attached as Exhibit D.

24. Plaintiffs' self-prepared inventory provided original costs for most items (with the required back up documentation); however, they provided no information on how they arrived at the replacement cost for each item.

25. The replacement cost for many of the items was oftentimes triple or even quadruple the original cost, with no back-up documentation for the replacement costs and no explanation for the discrepancy.

26. Plaintiffs have provided conflicting information on what they believe they are owed under the Policy.

27. On May 4, 2020, Plaintiffs submitted an estimate related to their contents which totaled $1,225,307.66. A true, accurate and correct copy of the correspondence from Charles Dauphin, dated May 4, 2020, is attached hereto as Exhibit E, p. 2.

28. On September 11, 2020, Plaintiffs executed a Sworn Statement in Proof of Loss – Contents ("Contents Proof of Loss") setting forth the net amount of claimed as the "maximum amount under the policy, believed to be $1,507,500." [NEF 29-7, p. 3].

29. The estimate included with Plaintiffs' Contents Proof of Loss is significantly higher than the prior estimate.

30. Neither of the estimates from Iris & Co. include supporting documentation regarding the replacement value of the items listed.

31. Pacific has repeatedly requested supporting documentation in the form of receipts, invoices from vendors, or even simply details regarding the specific items to be replaced or the identity of the vendors from whom Plaintiffs intended to purchase the items listed.

32. To date, Plaintiffs have refused to provide the requested documentation.

33. On August 14, 2020, Plaintiffs agreed to comply with the terms of the Policy and promised to request backup documentation from Iris & Co. regarding the replacement cost of the contents items.

34. Pacific specifically requested documentation regarding each item of Plaintiffs' contents claim, including documentation for the item itself, as well as

documentation regarding any fabric, labor, or other items involved in the claimed replacement cost of each item.

35. While Plaintiffs have produced a brief affidavit from Iris Thorpe, owner of Iris & Co., this affidavit is woefully deficient insofar as it provides none of the backup documentation requested by Pacific regarding alleged replacement costs for the items listed on Iris & Co.'s estimates. [Doc No. 29-9].

36. To date, no such documentation has been provided to Pacific.

37. To date, Pacific has paid $3,165,132.90 to Plaintiffs as follows:

a. $1,732,910.32 on the dwelling

b. $147,633.68 for debris removal

c. $1,091,489.81 on the contents

d. $178,099.09 for extra living expenses

e. $15,000 for mold remediation

I declare under penalty of perjury, pursuant to the provisions of 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this __18th_ day of May, 2022.

Jerry Rudoshko