FILED
2023 Jul-12 PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHARLES GOODRICH
and ALEXANDRA GOODRICH,
Plaintiffs,
vs. CIVIL ACTION NO.:
CV-2:22-CV-21-MHH

PACIFIC INDEMNITY COMPANY,

Defendant.

/

The Zoom videotaped deposition of BRITTANY DINGLER, taken pursuant to the Federal Rules of Civil Procedure before Tammy B. Hightower, Court Reporter, on the 11th day of May, 2023, starting at approximately 3:00 p.m.

APPEARANCES

FOR THE PLAINTIFFS:

CHARLES A. DAUPHIN, ESQUIRE
Dauphin Paris, LLC
408 Discovering Cypress Drive
San Marcos, Texas 78666
(205) 516-1058
cdauphin@dauphinparis.com

FOR THE DEFENDANT:

LUCIANA AQUINO, ESQUIRE
COZEN O'CONNOR
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 572-2052
LAquino@cozen.com

Videographer: Josh Gray

INDEX


| EXAMINATION BY: | PAGE NO. |
|---|---|
| Mr. Dauphin: | 6 |
| Ms. Aquino: | 13 |
| Certificate: | 19 |


EXHIBIT


| | |
|---|---|
| Exhibit 161: (Southern Scape Estimate) | 5 |


* * * * * * *

* * * * *

* * *

*

STIPULATION

IT IS STIPULATED by and between Counsel For the parties that this deposition be taken at this time by Tammy B. Hightower, Court Reporter and Notary Public, State at Large, who is to act as commissioner without formal issuance of commission to her; that said deposition be taken down stenographically, transcribed and certified by the commissioner.

Except for objections as to the form of the questions, no objections need be made at the time of the taking of the deposition by either party, but objections may be interposed by either party at the time the deposition is read into evidence, which shall be ruled upon by the Court on the trial of the cause upon the grounds of objection, then and there assigned.

The reading and signing of the deposition is waived.

VIDEOGRAPHER: We're going on the record at 3:02 p.m. Central time on May 11th, 2023. This is Media Unit 1 in the deposition of Brittany Dingler in the matter of Charles and Alexandra Goodrich versus Pacific Indemnity Company, filed in the U.S. District Court of the Northern District of Alabama.

Counsel will now state their names and affiliations for the record.

MR. DAUPHIN: Chuck Dauphin for the plaintiffs.

MS. AQUINO: Luciana Aquino for the defendant, Pacific.

VIDEOGRAPHER: Will the court reporter please swear in the witness.

THEREUPON,

BRITTANY DINGLER,

the witness, having first been duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. DAUPHIN:

Q. State your name, please, ma'am.
A. Brittany Dingler.
Q. And is it okay if I call you Brittany?
A. Yes, it is.
Q. All right. Pease feel free to call me Chuck at any time. Do you know Ali Goodrich?
A. I do.
Q. And how did you come to know Ali?
A. She came to us as a client for a project in Birmingham two years ago.
Q. And when you say she came to us, who is us?
A. Myself and Ben Page. We worked at Page Duke Landscape Architects.
Q. And where is Page Duke Landscape Architects?
A. It is located in Nashville, Tennessee.
Q. And just in case somebody looks it up, has Page Duke now split?
A. Correct.
Q. So Page and Duke went their separate ways?
A. Correct.
Q. All right. And who do you work for now?

A. I work for Duke Design Group.
Q. Okay. Tell us briefly what Page Duke Landscape Design did.
A. So we were a landscape architecture firm. We designed everything outside of a building for clients, and we mostly did high end residential work. So when Ali Goodrich came to us with her house, that was a very typical project for us to do.
We do the grading, all the site work the hard scape design, the planting design, and landscape lighting. We not do the install. We just do all the design work.
Q. And was Page Duke a well known, well thought of landscape design firm?
A. Yes. One of the best in the south.
Q. And what did -- and what -- first of all, what's your education, please, ma'am?
A. So I have a bachelors in landscape architecture from the University of Arkansas in 2015. And then I, myself, became a licensed landscape architect in 2020.
Q. And What did y'all do for the Dell Road House?
A. Yeah, so we designed the driveway

approach, all of the hard scape, the walkways. We did the grading plans for how the storm water is treated on site. And we also designed the planting, as well as the landscape lighting.
Q. And do you go ahead and obtain landscape contractors to put in the landscape?
A. Yes. We normally even bid out contractors to do the hard scape. But in Ali's case, she already had a contractor doing the entire project.
But normally for us, we are soliciting bids from landscape contractors that we typically work with that we know really well, and they know our expectations and what we're looking for in plants. And so we did that for Ali.
Q. Okay. And that's part of your routine job as a landscape architect?
A. Correct.
Q. Okay. Did you subsequently learn that Ali's house had burned?
A. We did.
Q. And did you talk with Ali about problems with her landscape after the fire?
A. We did.

Q. And when you say we did, which is what we say in the south, did you personally talk with Ali?
A. I did.
Q. And what did y'all decide to do?
A. We decided that it was best -- looking at everything on site and talking it over with her, that it was best to plant everything new and start over.
Q. And did you, yourself, visit the site?
A. I did.
Q. And what were the factors that went into that decision?
A. The fire itself and the ash that covered some of the plants -- and that can clog pores on plants, and you won't see the stress until months or a year later. And the best treatment for that is watering them.
And with it being an active construction site, watering was not exactly possible with everything having to be completely rebuilt and everything in the front, having to go back to a construction staging area with gravel.
It was just -- it was quite a mess.

So -- and all the soil, we didn't know what was going on from the fire and construction, so we felt it was best to start over.

Q. And was it your understanding that the irrigation system had been damaged as well?

A. Yes.

Q. And that was your recommendation?

A. Yes.

Q. Okay. And did you seek bids to perform the landscape project?

A. I did.

Q. Okay. I'm sorry. I lost you just a second. Okay. And do you have in front of you the estimate from Southern Scape?

A. Yes.

Q. And how did you obtain that --

MR. DAUPHIN: And let's mark this as Exhibit 161.

(Whereupon, Plaintiff's Exhibit Number 161 was marked for identification and is attached hereto.)

BY MR. DAUPHIN:

Q. How did you obtain this estimate?

A. I reached out to Greg Shaw at Southern Scape and asked if he would be interested in

replanting -- starting over on this project in Birmingham since he's located in Huntsville, Alabama, and we've worked with him a lot.

He was the closest one, and we he felt like he would do the best job, so we asked him to submit a bid to price it out.

Q. Is he with Southern Scape?

A. He is.

Q. And is he one that you would recommend doing the project?

A. For sure.

Q. And is this the bid that he submitted to you?

A. It is.

Q. Do you review bids to determine if they are reasonable or not?

A. I do.

Q. And what was your determination on review of his bid?

A. I felt that it was standard from what we were seeing all over the area, especially between Nashville and Florida. So I felt that it was a very fair bid.

Q. Now, the bid is dated December 4th, 2020, and the fire occurred in November of 2019.

Did the landscape cost increase significantly that year?

A. Not at that time. I don't feel like we saw the prices really go up effectively until 2021.

MR. DAUPHIN: That's all I've got. Thank you very much. And the defendants -- oh, before you leave -- Lucy, I assume we're doing this as usual stipulations?

MS. AQUINO: Yes, that's fine by me.

MR. DAUPHIN: And you have the right to read and sign your deposition --

MS. AQUINO: Chuck, actually, I do have a few questions for Ms. Dingler before you do that.

MR. DAUPHIN: Oh, okay. I was just going to go ahead and do it now, but you go ahead, and then we'll finish up with the read and sign stuff.

MS. AQUINO: Okay. Thank you.

MR. DAUPHIN: Certainly.

CROSS EXAMINATION

BY MS. AQUINO:

Q. Ms. Dingler, thank you for taking the time to speak with us today. My name is Lucy Aquino. I represent the defendants. I don't have a whole lot of questions for you, but I wanted to follow up on a few things; okay?

A. Okay.

Q. You mentioned that you were aware that the irrigation system was damaged; is that correct?

A. Yes.

Q. How did you find out that there was any damage to the irrigation system?

A. We were on site, and we looked at some fixtures. We also talked to the contractor, and he just pointed out with the fire trucks that came up there and the construction in process, that different areas had been damaged, and they had to turn it off.

Q. When you say you spoke to the contractor, do you recall who you spoke with?

A. I'm totally blanking on his name, the main contractor on the project. He was there when we worked on it before. I'm sorry I can't

remember his name. It's been a few years.
Q. Is it McCollough? Does that sound about; right?
A. I don't know if that rings a bell. I'm sorry.
Q. No problem. I understand. It's been awhile.
A. Yeah. I talk to a lot of contractors.
Q. You didn't personally inspect the irrigation system; correct?
A. I did not.
Q. When you visited the property after the fire, did you take any photographs?
A. I did.
Q. Do you still have those photographs?
A. I think we do. But since the firm split, a lot of records got all split up. So I'm not sure if I could still get to them.
Q. At any point, did you provide the Goodriches with copies of those photographs?
A. No.
Q. Were you ever asked to provide copies of those photographs?
A. Not until recently.
Q. And when you say recently, when did

that happen?

A. When I talked with Ali and Chuck a week or so ago about this going on and getting on this call.

Q. Okay. And what was the purpose of that conversation? What did you guys discuss?

A. Just discussed the problems and why I got the bid and just, you know, going over that again like I said today, the same thing.

Q. And did you review the photographs with them at that point?

A. No.

Q. But that was the first time that you were requested to provide copies of those photographs?

A. Yes.

Q. A week ago?

A. Uh-huh.

Q. And how many visits did you make to the Dell Road property following the fire?

A. I think a couple.

Q. Did you take photographs just one visit, or was it multiple visits that you took photographs of?

A. I mean, it's normal to take pictures,

but I don't know for sure.

Q. To the best of your knowledge, who would be in possession of those photographs now?

A. I'm not sure. Like I said, with the split of the firm, the different principals got different copies of things, so I'm not a hundred percent sure.

Q. Would you be able to check if you have copies of those photographs in your possession or in, I guess, Duke's possession?

A. Yes, I can check our files.

Q. Okay. Thank you. When you went to the property following the fire, what kind of damage did you observe -- visible damage did you observe to the landscaping, if any?

A. We went when it was already under reconstruction, so I never saw it right after the fire in its exact state.

Q. Do you recall when your first visit to the property following the fire occurred?

A. It would have been in the winter, I think, of that following time.

Q. So --

A. Again, I don't recall.

Q. That's okay. But I should mention the

fire was in November of 2019. Do you believe it was still in 2019, or would this have been like early 2020?
A. I think it would have been early 2020.
Q. Were you -- and you said that you were involved in the landscape design of the Dell Road property prior to the fire, correct, when they were first building it?
A. Correct.
Q. Were there any changes to the landscaping design following the fire that you're aware of?
A. We changed out a couple shrubs here and there, but it was nothing that would -- that really affected the design or the cost.
Q. Has the landscaping installation been completed following the fire?
A. I actually don't fully know.
Q. You're not involved in that?
A. Not in the actual completion, no.
MS. AQUINO: All right. That's all I have. Thank you so much for your time.
MR. DAUPHIN: Brittany, as I mentioned earlier, you have the right

to read and sign your deposition. It will not affect what Ms. Hightower has taken down, but you do have the opportunity to read, and if you have errors that you perceive, you may note those and submit those to us.

So I need you to tell us on the record if you want to read and sign, or if you waive your signature.

THE WITNESS: I waive may signature.

VIDEOGRAPHER: All right. We're going off the record at 3:15 p.m. this is the end of today's deposition.

COURT REPORTER: Mr. Dauphin, will you be ordering today?

MR. DAUPHIN: Yes.

COURT REPORTER: And Ms. Lucy?

MS. AQUINO: Yes, ma'am. We'll need a copy as well.

VIDEOGRAPHER: Lucy, would you like a copy of the video as well?

MS. AQUINO: I do not need the video. Thank you.

(End of video Zoom deposition.)

CERTIFICATE OF REPORTER

STATE OF ALABAMA
COUNTY OF MOBILE

I, TAMMY B. HIGHTOWER, Certified Court Reporter, certify that I was authorized to and did transcribe the foregoing deposition; and that the transcript is a true and complete record of the statements given by the witness and transcribed by me.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action. Dated this 24th day of May, 2023.

TAMMY B. HIGHTOWER, CCR
Court Reporter, #527
Expiration 9/30/2023

**1**

**1** 5:3
**11th** 1:23 5:3
**1230** 2:10
**13** 3:3
**161** 3:9 10:18,19
**18295** 19:19
**19** 3:4

**2**

**2015** 7:21
**2019** 11:25 17:1 17:2
**2020** 7:22 11:25 17:3,4
**2021** 12:5
**2023** 1:23 5:3 19:17
**205** 2:5
**21** 1:7
**24th** 19:16
**2:22** 1:7

**3**

**30309** 2:11
**3:00** 1:25
**3:02** 5:2
**3:15** 18:13

**4**

**400** 2:10
**404** 2:11
**408** 2:4
**4th** 11:24

**5**

**5** 3:9
**516-1058** 2:5
**527** 19:20
**572-2052** 2:11

**6**

**6** 3:3

**7**

**78666** 2:5

**9**

**9/30/2023** 19:20

**a**

**able** 16:8
**act** 4:5
**action** 1:7 19:15 19:16
**active** 9:19
**actual** 17:20
**actually** 12:16 17:18
**affect** 18:2
**affected** 17:15
**affiliations** 5:11
**ago** 6:10 15:3,17
**ahead** 8:5 12:20 12:21
**alabama** 1:1 5:9 11:3 19:2
**alexandra** 1:5 5:5
**ali** 6:6,8 7:7 8:16,23 9:3 15:2
**ali's** 8:8,21
**appearances** 2:1
**approach** 8:1
**approximately** 1:25
**aquino** 2:9 3:3 5:14,14 12:11 12:16,24 13:2,5 17:21 18:19,23
**architect** 7:22 8:18
**architects** 6:14 6:16
**architecture** 7:4 7:20
**area** 9:23 11:21
**areas** 13:19
**arkansas** 7:20
**ash** 9:14
**asked** 10:25 11:5 14:22
**assigned** 4:17
**assume** 12:9
**atlanta** 2:11
**attached** 10:21
**attorney** 19:12
**attorneys** 19:14
**authorized** 19:6
**aware** 13:9 17:12
**awhile** 14:7

**b**

**b** 1:21 3:8 4:4 19:5,19
**bachelors** 7:19
**back** 9:23
**believe** 17:1
**bell** 14:4
**ben** 6:13
**best** 7:16 9:6,8 9:17 10:3 11:5 16:2
**bid** 8:7 11:6,12 11:19,23,24 15:8
**bids** 8:12 10:9 11:15
**birmingham** 6:10 11:2
**blanking** 13:23
**briefly** 7:2
**brittany** 1:17 5:4,19 6:2,3 17:24
**building** 7:6 17:8
**burned** 8:21

**c**

**call** 6:3,5 15:4
**case** 6:18 8:9
**cause** 4:16
**ccr** 19:19
**cdauphin** 2:6
**central** 5:2
**certainly** 12:25
**certificate** 3:4 19:1
**certified** 4:8 19:5

**certify** 19:6,11
**changed** 17:13
**changes** 17:10
**charles** 1:4 2:3 5:5
**check** 16:8,11
**chuck** 5:12 6:6 12:16 15:2
**civil** 1:7,19
**client** 6:9
**clients** 7:6
**clog** 9:15
**closest** 11:4
**come** 6:8
**commission** 4:7
**commissioner** 4:6,9
**company** 1:8 5:7
**complete** 19:8
**completed** 17:17
**completely** 9:21
**completion** 17:20
**connected** 19:15
**construction** 9:20,23 10:2 13:18
**contractor** 8:9 13:16,22,24
**contractors** 8:6 8:8,12 14:8
**conversation** 15:6
**copies** 14:20,22 15:14 16:6,9
**copy** 18:20,22
**correct** 6:20,23 8:19 13:11 14:10 17:7,9
**cost** 12:1 17:15
**counsel** 4:2 5:10 19:12,14
**county** 19:3
**couple** 15:21 17:13
**court** 1:1,21 4:4 4:16 5:8,16 18:15,18 19:5 19:20
**covered** 9:15
**cozen** 2:9
**cozen.com** 2:12
**cross** 13:1
**cv** 1:7,7
**cypress** 2:4

**d**

**d** 3:1
**damage** 13:14 16:14,14
**damaged** 10:5 13:10,19
**dated** 11:24 19:16
**dauphin** 2:3,4 3:3 5:12,12,25 10:17,22 12:6 12:13,19,25 17:24 18:15,17
**dauphinparis....** 2:6
**day** 1:23 19:16
**december** 11:24
**decide** 9:5
**decided** 9:6
**decision** 9:13
**defendant** 1:9 2:8 5:15
**defendants** 12:8 13:5
**dell** 7:23 15:20 17:6
**deposition** 1:15 4:3,7,12,14,19 5:4 12:14 18:1 18:14,25 19:7
**design** 7:1,3,11 7:11,13,15 17:6 17:11,15
**designed** 7:5,25 8:3
**determination** 11:18
**determine** 11:15
**different** 13:19 16:5,6
**dingler** 1:17 5:4 5:19 6:2 12:17 13:3
**direct** 5:24
**discovering** 2:4
**discuss** 15:6
**discussed** 15:7
**district** 1:1,1 5:7,8
**division** 1:2
**doing** 8:9 11:10 12:9
**drive** 2:4
**driveway** 7:25
**duke** 6:14,15,19 6:21 7:1,2,14
**duke's** 16:10
**duly** 5:20

**e**

**e** 3:1,8
**earlier** 17:25
**early** 17:3,4
**education** 7:18
**effectively** 12:4
**either** 4:12,14
**employee** 19:12 19:13
**entire** 8:10
**errors** 18:5
**especially** 11:21
**esquire** 2:3,9
**estimate** 3:9 10:14,23
**evidence** 4:15
**exact** 16:18
**exactly** 9:20
**examination** 3:2 5:24 13:1
**examined** 5:22
**except** 4:10
**exhibit** 3:9 10:18,19

**expectations** 8:14
**expiration** 19:20

**f**

**factors** 9:12
**fair** 11:23
**federal** 1:19
**feel** 6:5 12:3
**felt** 10:3 11:4,20 11:22
**filed** 5:7
**files** 16:11
**financially** 19:15
**find** 13:13
**fine** 12:11
**finish** 12:22
**fire** 8:24 9:14 10:2 11:25 13:17 14:13 15:20 16:13,18 16:20 17:1,7,11 17:17
**firm** 7:5,15 14:16 16:5
**first** 5:20 7:17 15:13 16:19 17:8
**fixtures** 13:16
**florida** 11:22
**follow** 13:7
**following** 15:20 16:13,20,22 17:11,17
**follows** 5:23
**foregoing** 19:7
**form** 4:10
**formal** 4:6
**free** 6:5
**front** 9:22 10:13
**fully** 17:18
**further** 19:11

**g**

**georgia** 2:11
**getting** 15:3
**given** 19:9
**go** 8:5 9:23 12:4 12:20,21
**going** 5:1 10:2 12:20 15:3,8 18:13
**goodrich** 1:4,5 5:6 6:6 7:7
**goodriches** 14:20
**grading** 7:10 8:2
**gravel** 9:24
**gray** 2:14
**greg** 10:24
**grounds** 4:16
**group** 7:1
**guess** 16:10
**guys** 15:6

**h**

**h** 3:8
**happen** 15:1
**hard** 7:11 8:1,8
**hereto** 10:21
**high** 7:6
**hightower** 1:21 4:4 18:2 19:5,19
**house** 7:8,24 8:21
**huh** 15:18
**hundred** 16:6
**huntsville** 11:2

**i**

**identification** 10:20
**increase** 12:1
**indemnity** 1:8 5:6
**inspect** 14:9
**install** 7:12
**installation** 17:16
**interested** 10:25 19:16
**interposed** 4:13
**involved** 17:6 17:19
**irrigation** 10:5 13:10,14 14:10
**issuance** 4:6

**j**

**job** 8:18 11:5
**josh** 2:14

**k**

**kind** 16:13
**know** 6:6,8 8:13 8:14 10:1 14:4 15:8 16:1 17:18
**knowledge** 16:2
**known** 7:14

**l**

**landscape** 6:14 6:15 7:3,4,12,15 7:19,22 8:4,6,6 8:12,18,24 10:10 12:1 17:6
**landscaping** 16:15 17:11,16
**laquino** 2:12
**large** 4:5
**learn** 8:20
**leave** 12:8
**licensed** 7:21
**lighting** 7:12 8:4
**llc** 2:4
**located** 6:17 11:2
**looked** 13:15
**looking** 8:15 9:6
**looks** 6:18
**lost** 10:12
**lot** 11:3 13:6 14:8,17
**luciana** 2:9 5:14
**lucy** 12:9 13:4 18:18,21

**m**

**ma'am** 6:1 7:18 18:19
**made** 4:11
**main** 13:24
**make** 15:19
**marcos** 2:5
**mark** 10:17
**marked** 10:20
**matter** 5:5
**mccollough** 14:2
**mean** 15:25
**media** 5:3
**mention** 16:25
**mentioned** 13:9 17:25
**mess** 9:25
**mhh** 1:7
**mobile** 19:3
**months** 9:17
**multiple** 15:23

**n**

**n** 3:1
**n.e.** 2:10
**name** 6:1 13:4 13:23 14:1
**names** 5:11
**nashville** 6:17 11:22
**need** 4:11 18:7 18:20,23
**never** 16:17
**new** 9:8
**normal** 15:25
**normally** 8:7,11
**northern** 1:1 5:8
**notary** 4:5
**note** 18:5
**november** 11:25 17:1
**number** 10:19

**o**

**o'connor** 2:9
**objection** 4:17
**objections** 4:10 4:11,13
**observe** 16:14 16:15
**obtain** 8:5 10:16 10:23
**occurred** 11:25 16:20
**oh** 12:8,19
**okay** 6:3 7:2 8:17,20 10:9,12 10:13 12:19,24 13:7,8 15:5 16:12,25
**opportunity** 18:4
**ordering** 18:16
**outside** 7:5

**p**

**p.m.** 1:25 5:2 18:13
**pacific** 1:8 5:6 5:15
**page** 3:2 6:13,14 6:15,19,21 7:2 7:14
**paris** 2:4
**part** 8:17
**parties** 4:3 19:13,14
**party** 4:13,14
**peachtree** 2:10
**pease** 6:5
**perceive** 18:5
**percent** 16:7
**perform** 10:10
**personally** 9:2 14:9
**photographs** 14:13,15,20,23 15:10,15,22,24 16:3,9
**pictures** 15:25
**plaintiff's** 10:19
**plaintiffs** 1:6 2:2 5:13
**plans** 8:2
**plant** 9:8
**planting** 7:11 8:4
**plants** 8:15 9:15 9:16
**please** 5:17 6:1 7:18
**point** 14:19 15:11
**pointed** 13:17
**pores** 9:16
**possession** 16:3 16:9,10
**possible** 9:21
**price** 11:6
**prices** 12:4
**principals** 16:5
**prior** 17:7
**problem** 14:6
**problems** 8:24 15:7
**procedure** 1:19
**process** 13:18
**project** 6:10 7:9 8:10 10:10 11:1 11:10 13:24
**promenade** 2:10
**property** 14:12 15:20 16:13,20 17:7
**provide** 14:19 14:22 15:14
**public** 4:5
**purpose** 15:5
**pursuant** 1:17
**put** 8:6

**q**

**questions** 4:11 12:17 13:6
**quite** 9:25

**r**

**reached** 10:24

**read** 4:14 12:14 12:22 18:1,4,8
**reading** 4:18
**really** 8:13 12:4 17:15
**reasonable** 11:16
**rebuilt** 9:22
**recall** 13:22 16:19,24
**recently** 14:24 14:25
**recommend** 11:9
**recommendati...** 10:7
**reconstruction** 16:17
**record** 5:2,11 18:8,13 19:9
**records** 14:17
**relative** 19:12 19:13
**remember** 14:1
**replanting** 11:1
**reporter** 1:21 4:4 5:17 18:15 18:18 19:1,6,20
**represent** 13:5
**requested** 15:14
**residential** 7:7
**review** 11:15,19 15:10
**right** 6:5,24 12:14 14:3 16:17 17:21,25 18:12
**rings** 14:4
**road** 7:24 15:20 17:7
**routine** 8:17
**ruled** 4:15
**rules** 1:19

**s**

**san** 2:5
**saw** 12:4 16:17
**scape** 3:9 7:11 8:1,8 10:14,25 11:7
**second** 10:13
**see** 9:16
**seeing** 11:21
**seek** 10:9
**separate** 6:21
**shaw** 10:24
**shrubs** 17:13
**sign** 12:14,22 18:1,9
**signature** 18:9 18:11 19:19
**significantly** 12:1
**signing** 4:18
**site** 7:10 8:3 9:7 9:10,20 13:15
**soil** 10:1
**soliciting** 8:11
**somebody** 6:18
**sorry** 10:12 13:25 14:5
**sound** 14:2
**south** 7:16 9:2
**southern** 1:2 3:9 10:14,24 11:7
**speak** 13:4
**split** 6:19 14:17 14:17 16:5
**spoke** 13:21,22
**staging** 9:23
**standard** 11:20
**start** 9:9 10:3
**starting** 1:23 11:1
**state** 4:5 5:10 6:1 16:18 19:2
**statements** 19:9
**states** 1:1
**stenographica...** 4:8
**stipulated** 4:2
**stipulation** 4:1
**stipulations** 12:10
**storm** 8:2
**street** 2:10
**stress** 9:16
**stuff** 12:23
**submit** 11:6 18:6
**submitted** 11:12
**subsequently** 8:20
**suite** 2:10
**sure** 11:11 14:18 16:1,4,7
**swear** 5:17
**sworn** 5:20
**system** 10:5 13:10,14 14:10

**t**

**t** 3:8
**take** 14:13 15:22,25
**taken** 1:17 4:3,7 18:3
**talk** 8:23 9:2 14:8
**talked** 13:16 15:2
**talking** 9:7
**tammy** 1:21 4:4 19:5,19
**tell** 5:21 7:2 18:7
**tennessee** 6:17
**testified** 5:23
**texas** 2:5
**thank** 12:7,24 13:3 16:12 17:22 18:24
**thing** 15:9
**things** 13:7 16:6
**think** 14:16 15:21 16:22 17:4
**thought** 7:15
**time** 4:4,12,14 5:2 6:6 12:3 13:4 15:13 16:22 17:23

**today** 13:4 15:9 18:16
**today's** 18:14
**took** 15:23
**totally** 13:23
**transcribe** 19:7
**transcribed** 4:8 19:10
**transcript** 19:8
**treated** 8:3
**treatment** 9:18
**trial** 4:16
**trucks** 13:17
**true** 19:8
**truth** 5:21,21,22
**turn** 13:20
**two** 6:10
**typical** 7:8
**typically** 8:13

**u**

**u.s.** 5:7
**uh** 15:18
**under** 16:16
**understand** 14:6
**understanding** 10:4
**unit** 5:3
**united** 1:1
**university** 7:20
**usual** 12:10

**v**

**versus** 5:6
**video** 18:22,24 18:25
**videographer** 2:14 5:1,16 18:12,21
**videotaped** 1:15
**visible** 16:14
**visit** 9:10 15:23 16:19
**visited** 14:12
**visits** 15:19,23
**vs** 1:7

**w**

**waive** 18:9,10
**waived** 4:19
**walkways** 8:1
**want** 18:8
**wanted** 13:7
**water** 8:2
**watering** 9:18 9:20
**ways** 6:22
**we've** 11:3
**week** 15:3,17
**went** 6:21 9:12 16:12,16
**winter** 16:21
**witness** 5:17,20 18:10 19:9
**work** 6:24 7:1,7 7:10,13 8:13
**worked** 6:13 11:3 13:25

**x**

**x** 3:1,8

**y**

**y'all** 7:23 9:5
**yeah** 7:25 14:8
**year** 9:17 12:2
**years** 6:10 14:1

**z**

**zoom** 1:15 18:25

Alabama Rules of Civil Procedure

Part V. Depositions and Discovery

Rule 30

(e) Submission to witness; changes; signing. When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by the witness, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign. If the deposition is not signed by the witness within thirty (30) days of its submission to the witness, the officer shall sign it and state on the record the fact of the waiver or of the illness or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefor; the deposition may then be used as fully as though signed unless on a motion to suppress under Rule 32(d)(4) the

court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.

(F) Certification and filing by officer; exhibits; copies; notice of filing.

(1) The officer shall certify on the deposition that the witness was duly sworn by the officer and that the deposition is a true record of the testimony given by the witness. Unless otherwise ordered by the court, the officer shall then securely seal the deposition in an envelope indorsed with the title of the action and marked "Deposition of [here insert name of witness]" and shall promptly file it with the court in which the action is pending or send it by registered or certified mail to the clerk thereof for filing.

DISCLAIMER: THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.