FILED
2023 Jul-12 PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DISTRICT
SOUTHERN DIVISION
Civil Action No: 2:22-cv-21-MHH
------------------------------------x
CHARLES GOODRICH and ALEXANDRA GOODRICH,
Plaintiffs,
-against-
PACIFIC INDEMNITY COMPANY,
Defendant.
------------------------------------x

January 13, 2023
9:09 a.m.

Videotaped deposition of EMMA PALK, held at the offices of Cozen O'Connor PC, 3 WTC, New York, New York, pursuant to Notice, before Lynne D. Metz, a Shorthand Reporter and Notary Public of the State of New York.

A P P E A R A N C E S:

DAUPHIN PARIS, LLC
Attorneys for Plaintiffs
408 Discovering Cypress
San Marcos, Texas 78666
BY: CHARLES A. DAUPHIN, ESQ.
DIANE PARIS, ESQ.

COZEN O'CONNOR PC
Attorneys for Defendant
The Promenade
Suite 400
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
BY: ALYCEN A. MOSS, ESQ.

ALSO PRESENT:
Adrienne Chemel - Videographer

IT IS HEREBY STIPULATED AND AGREED, by and between the attorneys for the respective parties herein, that filing and sealing be and the same are hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question, shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed and sworn to before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the officer before whom the within deposition was taken.

THE VIDEOGRAPHER: Good morning. We are going on the record at 9:09 a.m. on January 13, 2023. Audio and video recording will continue to take place unless all parties agree to go off the record.

This is media unit one of the video recorded deposition of Emma Palk in the matter of Charles and Alexandra Goodrich versus Pacific Indemnity Company filed in the United States District Court for the Northern District of Alabama, Southern Division, case number 2:22-CV-211-MHH.

This deposition is being held at Cozen O'Connor PC located at 3 WTC, 175 Greenwich Street, 55th floor, New York, New York 10007.

My name is Adrienne Chemel from the firm Veritext and I am the videographer. The court reporter is Lynne Metz from the firm Veritext.

Counsel and all present in the room and everyone attending remotely will now state their appearances and affiliations for the record.

E. Palk

MR. DAUPHIN: Chuck Dauphin for the plaintiffs and my partner Diane Paris.

MS. MOSS: My name is Alycen Moss for defendant Pacific Indemnity Company.

THE VIDEOGRAPHER: Will the court reporter please swear in the witness.

E M M A P A L K,

called as a witness, having been first duly sworn by the Notary Public (Lynne D. Metz), was examined and testified as follows:

EXAMINATION BY

MR. DAUPHIN:

Q. Miss Palk, I am Chuck Dauphin. I am from the south. If you do not understand me or don't understand the question, if you will let me know I will rephrase it; okay?

A. Okay.

Q. What is your connection to the Goodrich policy and claim?

A. I am the underwriter for the Alabama agency.

Q. And where do you work?

E. Palk

A. Chubb.

Q. And physically?

A. Whitehouse Station, New Jersey.

Q. Do you work for several Chubb entities?

A. Yes.

Q. Which ones do you work for?

A. There is multiple.

Q. What underwriting functions do you perform?

A. I underwrite accounts at new line and renewal throughout the process.

Q. And exactly, what does that mean?

A. I review an account at new line to see if it is acceptable. I review appraisals and I review renewals.

Q. And how did you become aware that there was a fire loss by the Goodrichs?

A. I received a large loss report from my manager.

Q. Who is your manager?

A. At the time it was Julie Morris.

Q. In front of you are a series of documents that I have copied from your

E. Palk

underwriting file pages that were given to me and I would like to mark those as Exhibit 104.

(Deposition Exhibit 104, a multipage document Bates stamped Pacific 003415, 3417, 3418, 3420, 3421, 3460, 3466, 3465, 3468, 3471, marked for identification, as of this date.)

Q. Why did you get the loss report?

A. Any time there is a large loss that's sent to underwriting for review.

Q. What is it that you are reviewing?

A. We are reviewing to make sure we are adequately protecting the home and our client.

Q. As regards what?

A. Regards to the home since the exposure has changed.

Q. So you are looking at the policy? Tell me what you are doing, what you are looking at.

A. We are reviewing the loss details and determining if there is any requirements that need to be put into place to protect the home further.

Q. What type of apartments are you looking for?

E. Palk

A. It depends on the loss.

Q. In this case.

A. In this case it was to confirm it as protected. In this case it was in regards to the fire protection of the home.

Q. Moving forward after the fire?

A. Correct.

Q. And do you issue a new policy?

A. No.

Q. So what are you looking for?

A. We are looking to put requirements in place to protect the home further going forward.

Q. And what type of requirements?

A. In this case it was fire extinguishers. No smoking signs. We would require a course of renovation questionnaire from the client. A certificate of insurance from the contractor that's going to be working on the home.

Q. Is there a cutoff as to what is a large loss that requires you to do the review?

A. I don't know.

Q. What was the name of the person that notified you?

A. My manager Julie Morris.

E. Palk

Q. How did she notify you?

A. Via e-mail and a phone call.

Q. Do you store that e-mail somewhere?

A. Yes. It was in the file.

Q. You say in the file. Explain to me what file.

A. It is in our e-mail system.

Q. What all is the e-mail system; e-mails from who and what? Explain that to me please.

A. I don't understand the question.

MS. MOSS: I am going to object to the form. I just think it is really broad.

Q. You have an e-mail system; correct?

A. Yes.

Q. What do you use the e-mail system for?

A. Communication internal and external.

Q. And if I wanted to ask for copies of that file, how would you describe it?

MS. MOSS: I'll answer and say we provided you the entire underwriting file on the e-mails.

Q. Go ahead.

If I wanted to ask for the e-mails in the file, how would you describe it?

E. Palk

A. I am not understanding the question.
Q. Okay.
You got an e-mail in the e-mail system?
A. Right.
Q. What do you call that e-mail system?
A. Outlook.
Q. So you have Outlook in the underwriting department?
A. Yes.
Q. And who else has access to those e-mails?
A. I don't know.
MS. MOSS: So chuck, I will represent to you you have all of the e-mails as it relates to the underwriting of this policy.
Q. Do you do underwriting for -- I am sorry.
What type of losses do you do underwriting for? This is a fire loss. What other type of losses might you do underwriting for?
A. Any loss that occurs that I have notification of we would review accordingly.

E. Palk

Q. And earlier you said if that was a large loss.

Do you do like ten thousand dollar claims?

A. I don't know.

Q. Have you ever done a loss over ten thousand dollars?

A. I don't understand what you are asking. I am sorry.

Q. Earlier -- any time you don't understand please let me know.

Earlier you used the phrase large loss. What in your mind constitutes a large loss?

A. There are sent from management. I don't know what determines.

Q. But there is no doubt this was a large loss?

A. From what I was sent.

Q. And if you would look at Exhibit 104 and let's start in the lower right you will see what we call Bates stamp numbers. It is 30415.

Can you tell me what that is please Ma'am?

A. Can I have a moment to read it?

E. Palk

Q. Certainly.
A. Can you repeat the question?
Q. What is the purpose of this e-mail?
A. This was to contact the agency to start reviewing accordingly and to get the documentation needed for the file.
Q. And I am looking at the first sentence after you say hello Joni and you say "As the insured is preparing for the rebuild."
And how do you know about that?
A. From the loss report.
Q. And was the loss report attached to an e-mail?
A. I don't know.
Q. Where would the loss report be kept?
A. I don't know.
Q. How would you access the loss report?
A. It was sent to me to fill out.
Q. What is a loss report?
A. It gives information from a claims needed by underwriting to review the account accordingly and make sure that all protective devices are in place.
Q. Is this a form that you have?

E. Palk

A. Yes.
Q. And how often do you -- when do you use the form?
A. Only when it is sent to me for a report.
Q. And in the second line it says "Being that it is a renovation based off of a Chubb claim."
And where did you get that information?
A. The loss report.
Q. So what was in the loss report when it got to you?
A. I don't remember.
Q. What is generally in a loss report when it comes to you?
A. Facts about the claim.
Q. Do you know who prepares the loss report?
A. No.
Q. Once you get the loss report filled out, what do you do with it?
A. It gets sent back to management.
Q. How?

E. Palk

A. I don't know. We had saved -- I don't know the answer.

Q. What do you do with it when you get it back?

A. I hit save on the report and it gets sent somewhere.

Q. What is the name of the file that you save it to?

A. I don't know.

Q. You don't know what file -- when you hit save to save a loss report, generally what files are you using?

A. I don't know the answer.

Q. So you save it and you don't know where it goes?

A. Correct.

Q. Who does know?

A. I don't know.

Q. Do you ever see that loss report again?

A. No.

Q. What's the specific name of that loss report?

A. I believe it is large loss report.

E. Palk

Q. Looking at that same sentence it says "The surcharges wouldn't apply, but I still need all the information to document the file."

What does that mean?

A. Normally when we review a course of renovation there are surcharges that get put on an account.

Q. And I don't know anything about underwriting or fire loss or after a fire claim, so if you could be as elementary as possible; all right, what's a surcharge?

A. It's a surcharge that puts an additional premium on the account.

Q. After the fire?

A. In this case, no.

Q. Okay.

Because it wouldn't apply?

A. Correct.

Q. Let's assume it would apply, just for my education.

If there is a fire loss you add a surcharge to it?

A. No.

Q. When do you add the surcharge?

E. Palk

A. When it is a renovation not related to a claim.

Q. And you then state "I still need all the information to document the file."

And that would be the documentation requested in the loss form?

A. It is the information requested in the second paragraph of the e-mail.

Q. Thank you.

A. Yep.

Q. Course of renovation questionnaire, is that what we are talking about?

A. Yes.

Q. And COI is what?

A. Certificate of insurance.

Q. From the contractor?

A. Yes.

Q. Is that the contractor who is doing the repairs?

A. Correct.

Q. In the next sentence you talk about requirements for a ten-pound ABC rated fire extinguisher, et cetera?

A. Yes.

E. Palk

Q. And where do you get those requirements?

A. Those are there to protect the home. So like the loss does not happen again.

Q. And what happens if that's not done?

A. That's a requirement. It would be set up to non-renew.

Q. Prior to this time, this time being when you sent this e-mail December 13th, had there been any notations of a non-renewal of this policy?

A. I don't know.

Q. If there had been, would you have noted it somewhere?

A. It would be noted.

Q. Would you have done that?

A. I was not the underwriter when this account first was written.

Q. Where would it be noted?

A. In the underwriting file.

Q. And then in the next paragraph you state "Once I received a completed questionnaire and the COI, I will be ordering initial course of renovation appraisal for the home."

E. Palk

A. Mm-hmm.

Q. And I need you to say yes or no just so we are clear. You said mm-hmm. I understood --

A. Yes.

Q. -- what mm-hmm means, but was that ever done in this case?

A. Can you repeat that?

Q. Was the initial course of renovation ever done in this case?

A. I don't remember.

Q. Where would you look to find out?

A. Our appraisal system.

Q. And where did you find the appraisal system if you -- I am sorry.

If you wanted to look into the appraisal system to see if this was done, where would you look?

A. I would look under the policy number.

Q. Is that by insurance company or just the policy number in this case?

A. Just the policy number.

Q. Does the policy number reflect which insurance company has issued the policy?

E. Palk

A. Can you ask that differently? Sorry.
Q. No problem.
The policy number, does it -- looking at the policy number, can you determine which insurance company issued the policy?
A. Looking at the policy number alone, no.
Q. What else would you have to look at?
A. I would have to pull up the account.
Q. So if you wanted to look at the appraisal system you would look under the policy number?
A. Correct.
Q. Then that would take you to -- you could, I assume, access that policy number and that would take you to the account?
A. In the appraisal system it would show me what policy number I pulled up if there is any appraisals.
Q. Somehow you get to the account; correct?
A. Yes.
Q. How do you get there?
A. There is a different system.

E. Palk

Q. What is that?

A. It is called IMS.

Q. And what is IMS stand for, do you know?

A. I don't know.

Q. How do you access IMS?

A. I am sorry. It is a system on our computer.

Q. Is it separate from the appraisal system?

A. Yes.

Q. So if you wanted to see if the initial course of renovation was completed, you would go to the appraisal system and get the policy number?

A. Yes.

Q. And then you would have to go to the IMS system, enter that policy number to determine if there had been a course of renovation appraisal?

A. If there was a course of renovation appraisal it would show in the appraisal system under the policy number.

Q. Would you know -- how do you know which company issued that policy?

E. Palk

A. I would have to pull up the policy.

Q. And would you go to the IMS system for that?

A. Yes.

Q. Then you state "Be advised that I have added the COR indicator."

That would be the course of renovation indicator?

A. Yes.

Q. What is that?

A. It is an indicator on the accounts so we know the home is under renovation.

Q. Is there a code for that?

A. I don't know how the system works.

Q. When you add the COR indicator to the policy, do you do that in the underwriting system, appraisal system or IMS system or another system?

A. Another system. I contact another department, then they add it.

Q. What is that department?

A. Masterpiece.

Q. And did you know what Masterpiece system does?

A. It is where all the information is put

E. Palk

in for the policy.

Q. And this policy was a Masterpiece policy.

Are you aware of that?

A. Yes.

Q. And does that Masterpiece system cover all Masterpiece policies?

A. Yes.

Q. So in the Masterpiece system there will be a COR indicator that shows that this policy is -- the house is being renovated?

A. Correct.

Q. What do you do if the house is being demolished and rebuilt?

A. I don't know.

Q. Are there any other underwriters for Alabama claims?

A. Most likely.

Q. Did you handle claims from other states?

A. Yes.

Q. How many states do you handle claims from, approximately?

A. I don't know the answer.

E. Palk

Q. Several, more than ten?

A. I don't know.

Q. Is there anything unique about an Alabama claim that you would have to look at in order to be the underwriter on that claim?

A. Sorry. I am not understanding the question.

Q. Let's say you had this claim from Alabama and there is a claim from Tennessee almost exactly the same thing.

When you underwrite it, are there different factors that apply to those different claims solely because one is in Tennessee and one is in Alabama?

A. No.

Q. And are there any distinctions by state that would affect what you do in an underwriting basis after a loss?

A. I don't know.

Q. To your knowledge, you don't look at state specific indicators to determine what is needed after a loss; is that correct?

A. Correct.

Q. And if you would look at the next page

E. Palk

3417 and this is an email to your supervisor Julie Morris?

A. Yes.

Q. And you note that the insured is requesting that the claim adjuster be removed from the case?

A. Yes.

Q. And how did you obtain that information?

A. It was sent to me by a marketing representative.

Q. Would that be Joni?

A. It would be Ginton Green.

Q. Who is Ginton Green?

A. Can I turn the page?

Q. Certainly.

A. He was the AVP personal lines manager for Alabama and Mississippi.

Q. Where are you looking?

A. On the top of 3418 has his signature under his name. He goes by Mason.

Q. Oh, okay. Thank you.

And you conclude with this policy is currently set to non-renew due to non-compliance;

E. Palk

is that correct?
A. Yes.
Q. And the non-compliance is the failure to complete the COI, I mean COR?
A. At this point in time I don't know.
Q. As we go through these if any of these e-mails indicate to you the reasons you set it for non-compliance, please let me know.
A. Okay.
Q. Looking at 3418 and this is an e-mail from Joni Holman to Ginton or Mason Green?
A. Mm-hmm.
Q. Okay.
That's a yes?
A. Yes, sorry.
Q. Okay, no problem.
MS. MOSS: Just for the record, you do have to say yes or no and give a verbal answer instead of aha or uh-uh, that sort of thing.
A. Okay.
Q. And on the first line of the e-mail it states that "I had reached out the client this morning with a third request for the COC

E. Palk

questionnaire."

Is COC questionnaire different than the COR?

A. No.

Q. And do you know the status of the repair at this time which is March 26, 2020?

A. I don't remember.

Q. Does it matter whether or not reconstruction has started?

A. I don't know where we are at at the process. I don't know.

Q. Okay. I'll need to understand that answer.

What process are you talking about?

A. Like the e-mails compared to where we are in the claims scenario.

Q. Assume that there has been no repair reconstruction at this time and I mean by that not just cleaning up, but actual reconstruction.

Does that have any impact on whether or not the COR has to be completed?

A. Sorry. I am trying to understand the question.

MS. MOSS: I am not sure I understand

E. Palk

what you are asking either.
Q. Is there a timeline by which a COR should be completed?
A. It needs to be completed for a review.
Q. Is there a time limit that applies to it?
A. Normally yes.
Q. What is that time limit?
A. I don't know.
Q. When Miss Holman says she's reached out three times and has yet to receive a reply, is that significant to you?
A. Yes.
Q. And why is it significant?
A. We need the information to review the account and the home.
Q. And looking at the next page which is 3420; is that correct?
A. Yes.
Q. And this is an e-mail from you to Joni; is that correct?
A. Yes.
MR. DAUPHIN: Alycen, I assume the redacted portion is when this information

E. Palk

was sent to you or is there another?

MS. MOSS: That's not -- I don't know if that's mine or my assistant's, but yeah. That was just us printing it out I guess but that's us.

MR. DAUPHIN: And it would have been after the lawsuit was filed?

MS. MOSS: It was when it was forwarded to us, yeah.

MR. DAUPHIN: Okay.

I need to know whether that was -- for followup whether that would have been before or after the lawsuit was filed.

MS. MOSS: After the lawsuit.

MR. DAUPHIN: Okay.

BY MR. DAUPHIN:

Q. Now looking at page 3420, this is an e-mail from you to Joni?

A. Yes.

Q. And you state "If they are demolishing the home, the non-renewal will not be lifted as they will be unable to comply with the requirement."

Why are you sending this e-mail?

E. Palk

A. Do I know what comes -- can I see what came before it?

MS. MOSS: If you need to look at the context of the e-mail do that.

MR. DAUPHIN: Yes, she is right.

BY MR. DAUPHIN:

Q. Are you looking on 3421?

A. Yes.

Q. Let's start with 3421.

This is the way I received it; okay?

A. Okay.

Q. 3421 is an e-mail from Joni Holman to you; is that correct?

A. Yes.

Q. And if you would peruse that and see if that gives you some indication as to why you sent the e-mail we discussed earlier.

A. The non-renewal stood since compliance hadn't been met.

Q. We are looking at going back to page 3420?

A. Yes.

Q. And this is your e-mail and you say "Demolishing the home, the non-renewal will not be

E. Palk

lifted."?

A. Yes.

Q. And why is that?

A. We hadn't received compliance on the requirements.

Q. So if you received compliance on the requirements, would the non-renewal be lifted?

A. It would have been reviewed for acceptability.

Q. And who does that?

A. That would be me.

Q. Do you recall any conversations with Joni Holman after your e-mail of June 10th?

A. I don't remember.

Q. Do you make notes to a file other than e-mail correspondence?

A. Sometimes.

Q. And do you save those notes?

A. Yes.

Q. How are they saved, in what system?

A. In IMS.

Q. IMS, okay.

Do you recall if you made any notes in this case?

E. Palk

A. I don't remember.

Q. If I wanted to request those notes, what should I request?

A. I am sorry. I don't know how to answer that.

MS. MOSS: You need to ask me for any underwriting notes that she may have written and I think that we provided the entire underwriting file to you and my recollection is that we also looked for notes and there were not any, but I will double check.

Q. If you look at page 3460, which I think is the next one.

A. Yes.

Q. And this is an e-mail from Joni to you back in January and she indicates that she spoke to the adjuster this afternoon, received an update on the claim and he has advised that construction is to begin at the first part of March.

Is that significant to you?

A. Yes.

Q. Why is that significant?

A. We would need to review the renovation that was occurring at the home prior to the start

E. Palk

of work.

Q. And if you look at page 3471 and this is an e-mail from you to Julie Morris and Dorthea Johnson; is that correct?

A. Yes.

Q. And who is Miss Johnson?

A. She was the underwriting center manager.

Q. And what is the management hierarchy between Miss Johnson and Miss Morris?

A. Julie reported into Dorthea.

Q. And you state "I just spoke to the claims adjuster."

Do you recall if that was Jeremy Elliot?

A. Yes.

Q. And you state "He advised that they are demoing the house down to studs besides the basement."

Is that correct?

A. Yes.

Q. And what did that mean to you?

A. That they were demoing the home down to the studs.

E. Palk

Q. And studs means removing all interior walls, I mean other than the studs, the framework?

A. Yes.

Q. I don't mean -- clearly you are not removing the studs?

A. Yes.

Q. But everything else goes; right?

A. Yes.

Q. And the last sentence "He believes the rebuild period would be approximately ten to 12 months."

Is that significant to you?

A. Yes.

Q. And why?

A. We would need to underwrite and keep tabs on the renovation project. So I would need to know how long it would take.

Q. Could there have been notes that you took about keeping up with the renovation project that are not in these e-mails possibly?

A. I don't know.

Q. Could be?

MS. MOSS: She just said she doesn't know.

E. Palk

MR. DAUPHIN: I know.

BY MR. DAUPHIN:

Q. Could there be?

A. Potentially.

Q. In this case a Miss Goldsmith was a risk loss specialist, for lack of a better phrase, that looked at the house right after it was insured and she noted that there were not any fire alarms or fire extinguishers on the first floor and notes, in essence, that if that's not corrected the policy would be non-renewed.

Did you look at any of that?

A. No. I was not the underwriter at the time.

Q. And did any of that play into the decisions you made in this case?

A. No.

Q. And is it normal for you at the beginning of a claim review to talk with the adjuster who is handling the case?

A. For large losses.

Q. Thank you for your time. That's all I've got.

A. Thank you.

E. Palk

THE VIDEOGRAPHER: This marks the end of the deposition. We are going off the record at 9:49 a.m.

(Time Noted: 9:49 a.m.)

C E R T I F I C A T E

STATE OF NEW YORK )
: ss.
COUNTY OF NEW YORK )

I, LYNNE D. METZ, a Shorthand Reporter and a Notary Public within and for the State of New York, do hereby certify that the foregoing deposition of EMMA PALK was taken before me on the 13th day of January, 2023;

That the said witness was duly sworn before the commencement of her testimony; that the said testimony was taken stenographically by me and then transcribed.

I further certify that I am not related by blood or marriage to any of the parties to this action or interested directly or indirectly in the matter in controversy; nor am I in the employ of any of the counsel in this action.

IN WITNESS WHEREOF, I have hereunto set my hand this 15th day of January, 2023.

Lynne Metz

LYNNE D. METZ

January 13, 2023

I N D E X

| WITNESS | EXAMINATION BY | PAGE |
|---|---|---|
| EMMA PALK | MR. DAUPHIN | 5 |

---------- INFORMATION REQUESTS ----------

| | |
|---|---|
| DIRECTIONS (DI): | None |
| INSERT: | None |
| RULINGS (RL): | None |
| REQUESTS (RQ): | None |
| CERTIFIED (CE): | None |
| MOTIONS (MO): | None |

E X H I B I T S

| Deposition Exhibits | For ID |
|---|---|
| Exhibit 104, a multipage document Bates stamped Pacific 003415, 3417, 3418, 3420, 3421, 3460, 3466, 3465, 3468, 3471 | 7 |

(Exhibit retained by the court reporter.)

To: ALYCEN A. MOSS, ESQ.
Re: Signature of Deponent Emma Palk
Date Errata due back at our offices: 30 days

Greetings:

This deposition has been requested for read and sign by the deponent. It is the deponent's responsibility to review the transcript, noting any changes or corrections on the attached PDF Errata. The deponent may fill out the Errata electronically or print and fill out manually.

Once the Errata is signed by the deponent and notarized, please mail it to the offices of Veritext (below).

When the signed Errata is returned to us, we will seal and forward to the taking attorney to file with the original transcript. We will also send copies of the Errata to all ordering parties.

If the signed Errata is not returned within the time above, the original transcript may be filed with the court without the signature of the deponent.

Please Email the completed errata/witness cert page to CS-SOUTHEAST@VERITEXT.COM
or mail to
Veritext Production Facility
2031 Shady Crest Drive
Hoover, AL 35216
205-397-2397

ERRATA for ASSIGNMENT #5652116

I, the undersigned, do hereby certify that I have read the transcript of my testimony, and that

___ There are no changes noted.

___ The following changes are noted:

Pursuant to Civil Procedure, Rule 30. ALA. CODE § 5-30(e) (2017). Rule 30(e) states any changes in form or substance which you desire to make to your testimony shall be entered upon the deposition with a statement of the reasons given for making them. To assist you in making any such corrections, please use the form below. If additional pages are necessary, please furnish same and attach.

Page _____ Line ______ Change ____________________________

____________________________________________________________

Reason for change ________________________________________

Page _____ Line ______ Change ____________________________

____________________________________________________________

Reason for change ________________________________________

Page _____ Line ______ Change ____________________________

____________________________________________________________

Reason for change ________________________________________

Page _____ Line ______ Change ____________________________

____________________________________________________________

Reason for change ________________________________________

Page _____ Line ______ Change ____________________________

Page ______ Line _______ Change ______________________________

______________________________________________________________

Reason for change ____________________________________________

Page ______ Line _______ Change ______________________________

______________________________________________________________

Reason for change ____________________________________________

Page ______ Line _______ Change ______________________________

______________________________________________________________

Reason for change ____________________________________________

Page ______ Line _______ Change ______________________________

______________________________________________________________

Reason for change ____________________________________________

Page ______ Line _______ Change ______________________________

______________________________________________________________

Reason for change ____________________________________________

____________________________________________

DEPONENT'S SIGNATURE

Sworn to and subscribed before me this ___ day of

____________________, ________.

________________________________________

NOTARY PUBLIC / My Commission Expires:_______________

**0**

**003415** 7:5 37:19

**1**

**10007** 4:17
**104** 7:3,4 11:20 37:18
**10th** 30:14
**12** 33:11
**1230** 2:16
**13** 1:15 4:4 37:2
**13th** 17:10 36:9
**15th** 36:21
**175** 4:15

**2**

**2017** 39:7
**2020** 26:7
**2023** 1:15 4:4 36:9,21 37:2
**2031** 38:21
**205-397-2397** 38:23
**21** 1:5
**211** 4:13
**26** 26:7
**2:22** 1:5 4:13

**3**

**3** 1:19 4:15
**30** 38:3 39:6,7
**30309** 2:17
**30415** 11:22
**3417** 7:5 24:2 37:19
**3418** 7:6 24:21 25:11 37:19
**3420** 7:6 27:19 28:18 29:22 37:20
**3421** 7:6 29:8,10 29:13 37:20
**3460** 7:6 31:13 37:20
**3465** 7:6 37:20
**3466** 7:6 37:20
**3468** 7:6 37:20
**3471** 7:7 32:3 37:21
**35216** 38:22

**4**

**400** 2:15
**408** 2:6
**4313** 36:23

**5**

**5** 37:6
**5-30** 39:6
**55th** 4:16
**5652116** 39:1

**7**

**7** 37:18
**78666** 2:7

**9**

**9:09** 1:16 4:3
**9:49** 35:4,5

**a**

**a.m.** 1:16 4:3 35:4,5
**abc** 16:23
**above** 38:15
**acceptability** 30:10
**acceptable** 6:16
**access** 10:12 12:18 19:16 20:7
**account** 6:15 12:22 15:8,14 17:19 19:10,17 19:21 27:17
**accounts** 6:12 21:12
**action** 1:5 36:16 36:19
**actual** 26:20
**add** 15:22,25 21:16,20
**added** 21:7
**additional** 15:14 39:9
**adequately** 7:14
**adjuster** 24:6 31:18 32:14 34:21
**administer** 3:14
**adrienne** 2:22 4:18
**advised** 21:6 31:19 32:18
**affect** 23:18
**affiliations** 4:24
**afternoon** 31:18
**agency** 5:24 12:5
**agree** 4:6
**agreed** 3:4,8,12
**aha** 25:20
**ahead** 9:23
**al** 38:22
**ala** 39:6
**alabama** 1:3 4:12 5:23 22:18 23:5,10,15 24:19
**alarms** 34:10
**alexandra** 1:7 4:9
**alycen** 2:18 5:4 27:24 38:1
**answer** 9:20 14:3,14 22:25 25:20 26:14 31:6
**apartments** 7:24
**appearances** 4:24
**applies** 27:6
**apply** 15:3,18 15:20 23:13
**appraisal** 17:25 18:14,15,18 19:12,18 20:10 20:15,20,22,22 21:18
**appraisals** 6:16 19:20

**approximately** 22:24 33:11
**asking** 11:10 27:2
**assignment** 39:1
**assist** 39:8
**assistant's** 28:4
**assume** 15:20 19:16 26:18 27:24
**atlanta** 2:17
**attach** 39:9
**attached** 12:13 38:7
**attending** 4:23
**attorney** 38:12
**attorneys** 2:5,13 3:5
**audio** 4:4
**authorized** 3:14
**avp** 24:18
**aware** 6:18 22:5

**b**

**b** 37:16
**back** 13:24 14:5 29:21 31:17 38:3
**based** 13:8
**basement** 32:20
**basis** 23:19
**bates** 7:5 11:22 37:18
**beginning** 34:20
**believe** 14:25
**believes** 33:10
**better** 34:7
**blood** 36:15
**broad** 9:13

**c**

**c** 2:2 36:2,2
**call** 9:3 10:7 11:22
**called** 5:10 20:3
**case** 4:13 8:3,4,5 8:15 15:16 18:8 18:11,22 24:7 30:25 34:6,17 34:21
**ce** 37:13
**center** 32:8
**cert** 38:18
**certainly** 12:2 24:17
**certificate** 8:18 16:16
**certified** 37:13
**certify** 36:7,14 39:2
**cetera** 16:24
**change** 39:11,13 39:14,16,17,19 39:20,22,23 40:1,3,4,6,7,9 40:10,12,13,15
**changed** 7:17
**changes** 38:7 39:4,5,7
**charles** 1:7 2:8 4:9
**check** 31:12
**chemel** 2:22 4:18
**chubb** 6:2,5 13:8
**chuck** 5:2,16 10:15
**civil** 1:5 39:6
**claim** 5:22 13:9 13:18 15:10 16:3 23:5,6,9,10 24:6 31:19 34:20
**claims** 11:5 12:21 22:18,20 22:23 23:14 26:17 32:14
**cleaning** 26:20
**clear** 18:4
**clearly** 33:5
**client** 7:14 8:18 25:24
**coc** 25:25 26:3
**code** 21:14 39:6
**coi** 16:15 17:24 25:5
**comes** 13:17 29:2
**commencement** 36:11
**commission** 40:23
**communication** 9:17
**company** 1:11 4:10 5:5 18:21 18:25 19:6 20:25
**compared** 26:16
**complete** 25:5
**completed** 17:23 20:14 26:22 27:4,5 38:18
**compliance** 24:25 25:4,9 29:19 30:5,7
**comply** 28:23
**computer** 20:9
**conclude** 24:24
**confirm** 8:4
**connection** 5:21
**constitutes** 11:14
**construction** 31:19
**contact** 12:5 21:19
**context** 29:5
**continue** 4:5
**contractor** 8:19 16:17,19
**controversy** 36:17
**conversations** 30:13
**copied** 6:25
**copies** 9:18 38:13

**cor** 21:7,16 22:11 25:5 26:4 26:22 27:3
**correct** 8:8 9:14 14:17 15:19 16:21 19:14,22 22:13 23:23,24 25:2 27:19,22 29:14 32:5,21
**corrected** 34:12
**corrections** 38:7 39:9
**correspondence** 30:17
**counsel** 4:22 36:18
**county** 36:4
**course** 8:17 15:6 16:12 17:24 18:10 20:14,19 20:21 21:8
**court** 1:2 4:11 4:20 5:6 37:22 38:16
**cover** 22:7
**cozen** 1:19 2:12 4:14
**crest** 38:21
**cs** 38:18
**currently** 24:25
**cutoff** 8:20
**cv** 1:5 4:13
**cypress** 2:6

**d**

**d** 1:21 5:11 36:5 36:24 37:4
**date** 7:8 38:3
**dauphin** 2:4,8 5:2,2,15,16 27:24 28:7,11 28:16,17 29:6,7 34:2,3 37:6
**day** 36:9,21 40:19
**days** 38:3
**december** 17:10
**decisions** 34:17
**defendant** 1:12 2:13 5:5
**demoing** 32:19 32:24
**demolished** 22:15
**demolishing** 28:21 29:25
**department** 10:10 21:20,21
**depends** 8:2
**deponent** 38:2,6 38:7,10,16
**deponent's** 38:6 40:18
**deposition** 1:18 3:13,17 4:8,14 7:4 35:3 36:8 37:17 38:6 39:8
**describe** 9:19,25
**desire** 39:7
**details** 7:21
**determine** 19:5 20:18 23:22
**determines** 11:16
**determining** 7:22
**devices** 12:24
**di** 37:9
**diane** 2:9 5:3
**different** 19:25 23:13,13 26:3
**differently** 19:2
**directions** 37:9
**directly** 36:16
**discovering** 2:6
**discussed** 29:18
**distinctions** 23:17
**district** 1:2,3 4:11,12
**division** 1:4 4:13
**document** 7:5 15:4 16:5 37:18
**documentation** 12:7 16:6
**documents** 6:25
**doing** 7:19 16:19
**dollar** 11:4
**dollars** 11:8
**dorthea** 32:4,12
**double** 31:12
**doubt** 11:17
**drive** 38:21
**due** 24:25 38:3
**duly** 5:10 36:10

**e**

**e** 2:2,2 5:1,9 6:1 7:1 8:1 9:1,3,4,8 9:9,9,14,16,22 9:24 10:1,4,4,7 10:13,16 11:1 12:1,4,14 13:1 14:1 15:1 16:1,9 17:1,10 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1,8,11,23 26:1,16 27:1,21 28:1,19,25 29:1 29:5,13,18,24 30:1,14,17 31:1 31:16 32:1,4 33:1,21 34:1 35:1 36:2,2 37:4 37:16 39:6,7
**earlier** 11:2,11 11:13 29:18
**education** 15:21
**effect** 3:15
**either** 27:2
**electronically** 38:8
**elementary** 15:11

**elliot** 32:16
**email** 24:2 38:18
**emma** 1:18 4:8 36:8 37:6 38:2
**employ** 36:18
**enter** 20:18
**entered** 39:8
**entire** 9:21 31:9
**entities** 6:6
**errata** 38:3,7,8 38:10,12,13,15 38:18 39:1
**esq** 2:8,9,18 38:1
**essence** 34:11
**et** 16:24
**exactly** 6:14 23:11
**examination** 5:14 37:5
**examined** 5:12
**except** 3:9
**exhibit** 7:3,4 11:20 37:18,22
**exhibits** 37:17
**expires** 40:23
**explain** 9:6,10
**exposure** 7:16
**external** 9:17
**extinguisher** 16:24
**extinguishers** 8:16 34:10

**f**

**f** 36:2
**facility** 38:20
**factors** 23:13
**facts** 13:18
**failure** 25:4
**file** 7:2 9:5,6,7 9:19,21,25 12:7 14:8,11 15:4 16:5 17:21 30:16 31:10 38:12
**filed** 4:10 28:8 28:14 38:15
**files** 14:13
**filing** 3:6
**fill** 12:19 38:7,8
**filled** 13:22
**find** 18:13,15
**fire** 6:19 8:6,7 8:15 10:21 15:10,10,15,22 16:23 34:9,10
**firm** 4:19,21
**first** 5:10 12:8 17:19 25:23 31:20 34:10
**floor** 4:16 34:10
**following** 39:5
**follows** 5:12
**followup** 28:13
**force** 3:15
**foregoing** 36:7
**form** 3:9 9:13 12:25 13:4 16:7 39:7,9
**forward** 8:7,13 38:12
**forwarded** 28:10
**framework** 33:3
**front** 6:24
**functions** 6:10
**furnish** 39:9
**further** 3:8,12 7:23 8:13 36:14

**g**

**generally** 13:16 14:12
**georgia** 2:17
**ginton** 24:14,15 25:12
**give** 25:19
**given** 7:2 39:8
**gives** 12:21 29:17
**go** 4:6 9:23 20:14,17 21:3 25:7
**goes** 14:16 24:22 33:8
**going** 4:3 8:13 8:19 9:12 29:21 35:3
**goldsmith** 34:6
**good** 4:2
**goodrich** 1:7,8 4:9 5:22
**goodrichs** 6:19
**green** 24:14,15 25:12
**greenwich** 4:15
**greetings** 38:5
**guess** 28:5

**h**

**h** 37:16
**hand** 36:21
**handle** 22:20,23
**handling** 34:21
**happen** 17:5
**happens** 17:6
**held** 1:19 4:14
**hello** 12:9
**hereunto** 36:20
**hierarchy** 32:10
**hit** 14:6,12
**hmm** 18:2,4,7 25:13
**holman** 25:12 27:11 29:13 30:14
**home** 7:14,16,23 8:6,13,19 17:4 17:25 21:13 27:17 28:22 29:25 31:25 32:24
**hoover** 38:22
**house** 22:12,14 32:19 34:8

**i**

**identification** 7:7

**impact** 26:21
**ims** 20:3,4,7,18 21:3,18 30:22 30:23
**indemnity** 1:11 4:10 5:5
**indicate** 25:8
**indicates** 31:17
**indication** 29:17
**indicator** 21:7,9 21:12,16 22:11
**indicators** 23:22
**indirectly** 36:17
**information** 12:21 13:11 15:4 16:5,8 21:25 24:10 27:16,25 37:8
**initial** 17:24 18:10 20:13
**insert** 37:10
**insurance** 8:18 16:16 18:21,25 19:6
**insured** 12:10 24:5 34:9
**interested** 36:16
**interior** 33:2
**internal** 9:17
**issue** 8:9
**issued** 18:25 19:6 20:25

**j**

**january** 1:15 4:4 31:17 36:9 36:21 37:2
**jeremy** 32:15
**jersey** 6:4
**johnson** 32:5,7 32:11
**joni** 12:9 24:13 25:12 27:22 28:19 29:13 30:14 31:16
**julie** 6:23 8:25 24:2 32:4,12
**june** 30:14

**k**

**k** 5:9
**keep** 33:16
**keeping** 33:20
**kept** 12:16
**know** 5:19 8:22 10:14 11:6,12 11:16 12:11,15 12:17 13:19 14:2,3,10,11,14 14:15,18,19 15:9 17:13 20:5 20:6,24,24 21:13,15,23 22:16,25 23:3 23:20 25:6,9 26:6,11,12 27:10 28:3,12 29:2 31:5 33:18 33:22,25 34:2
**knowledge** 23:21

**l**

**l** 5:9
**lack** 34:7
**large** 6:20 7:10 8:21 11:3,13,14 11:17 14:25 34:22
**lawsuit** 28:8,14 28:15
**lifted** 28:22 30:2 30:8
**likely** 22:19
**limit** 27:6,9
**line** 6:12,15 13:7 25:23 39:11,14,17,20 39:23 40:1,4,7 40:10,13
**lines** 24:18
**llc** 2:4
**located** 4:15
**long** 33:18
**look** 11:20 18:13,17,19,20 19:9,11,12 23:5 23:21,25 29:4 31:13 32:3 34:13
**looked** 31:11 34:8
**looking** 7:18,19 7:25 8:11,12 12:8 15:2 19:4,7 24:20 25:11 27:18 28:18 29:8,21
**loss** 6:19,20 7:9 7:10,21 8:2,21 10:21,24 11:3,7 11:14,14,18 12:12,13,16,18 12:20 13:12,13 13:16,19,22 14:12,20,23,25 15:10,22 16:7 17:5 23:19,23 34:7
**losses** 10:20,22 34:22
**lower** 11:21
**lynne** 1:21 4:20 5:11 36:5,24

**m**

**m** 5:9,9
**ma'am** 11:24
**made** 30:24 34:17
**mail** 9:3,4,8,9 9:14,16 10:4,4,7 12:4,14 16:9 17:10 25:11,23 27:21 28:19,25 29:5,13,18,24 30:14,17 31:16 32:4 38:10,19
**mails** 9:9,22,24 10:13,16 25:8 26:16 33:21

**make** 7:13 12:23 30:16 39:7
**making** 39:8,8
**management** 11:15 13:24 32:10
**manager** 6:21 6:22 8:25 24:18 32:9
**manually** 38:8
**march** 26:7 31:20
**marcos** 2:7
**mark** 7:3
**marked** 7:7
**marketing** 24:11
**marks** 35:2
**marriage** 36:15
**mason** 24:22 25:12
**masterpiece** 21:22,23 22:3,7 22:8,10
**matter** 4:9 26:9 36:17
**mean** 6:14 15:5 25:5 26:19 32:23 33:3,5
**means** 18:7 33:2
**media** 4:7
**met** 29:20
**metz** 1:21 4:20 5:11 36:5,24
**mhh** 1:5 4:13
**mind** 11:14
**mine** 28:4
**mississippi** 24:19
**mm** 18:2,4,7 25:13
**mo** 37:14
**moment** 11:25
**months** 33:12
**morning** 4:2 25:25
**morris** 6:23 8:25 24:3 32:4 32:11
**moss** 2:18 5:4,4 9:12,20 10:15 25:18 26:25 28:3,9,15 29:4 31:7 33:24 38:1
**motions** 37:14
**moving** 8:7
**multipage** 7:4 37:18
**multiple** 6:9

**n**

**n** 2:2 37:4
**n.e.** 2:16
**name** 4:18 5:4 8:23 14:8,23 24:22
**necessary** 39:9
**need** 7:22 15:3 16:4 18:3 26:13 27:16 28:12 29:4 31:7,24 33:16,17
**needed** 12:7,22 23:23
**needs** 27:5
**new** 1:20,20,22 4:16,16 6:4,12 6:15 8:9 36:3,4 36:7
**non** 17:8,11 24:25,25 25:4,9 28:22 29:19,25 30:8 34:12
**normal** 34:19
**normally** 15:6 27:8
**northern** 1:3 4:12
**notarized** 38:10
**notary** 1:21 5:11 36:6 40:23
**notations** 17:11
**note** 24:5
**noted** 17:15,16 17:20 34:9 35:5 39:4,5
**notes** 30:16,19 30:24 31:3,8,11 33:19 34:11
**notice** 1:20
**notification** 10:25
**notified** 8:24
**notify** 9:2
**noting** 38:7
**number** 4:13 18:20,22,23,24 19:4,5,7,13,16 19:19 20:15,18 20:23
**numbers** 11:22

**o**

**o'connor** 1:19 2:12 4:15
**oath** 3:15
**object** 9:12
**objections** 3:9
**obtain** 24:9
**occurring** 31:25
**occurs** 10:24
**officer** 3:14,16
**offices** 1:19 38:3 38:10
**oh** 24:23
**okay** 5:19,20 10:3 15:17 24:23 25:10,14 25:17,22 26:13 28:11,16 29:11 29:12 30:23
**once** 13:22 17:23 38:10
**ones** 6:8
**order** 23:6
**ordering** 17:24 38:13
**original** 38:13 38:15

**outlook** 10:8,9

**p**

**p** 2:2,2 5:9
**pacific** 1:11 4:10 5:5 7:5 37:19
**page** 23:25 24:16 27:18 28:18 29:21 31:13 32:3 37:5 38:18 39:11,14 39:17,20,23 40:1,4,7,10,13
**pages** 7:2 39:9
**palk** 1:18 4:8 5:1,16 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:8 37:6 38:2
**paragraph** 16:9 17:22
**paris** 2:4,9 5:3
**part** 31:20
**parties** 3:5 4:6 36:15 38:13
**partner** 5:3
**pc** 1:19 2:12 4:15
**pdf** 38:7
**peachtree** 2:16
**perform** 6:11
**period** 33:11
**person** 8:23
**personal** 24:18
**peruse** 29:16
**phone** 9:3
**phrase** 11:13 34:7
**physically** 6:3
**place** 4:5 7:23 8:13 12:24
**plaintiffs** 1:9 2:5 5:3
**play** 34:16
**please** 5:7 9:10 11:12,23 25:9 38:10,18 39:9,9
**point** 25:6
**policies** 22:8
**policy** 5:22 7:18 8:9 10:17 17:12 18:20,22,23,24 18:25 19:4,5,6,7 19:12,16,19 20:15,18,23,25 21:2,17 22:2,3,4 22:12 24:24 34:12
**portion** 27:25
**possible** 15:11
**possibly** 33:21
**potentially** 34:5
**pound** 16:23
**premium** 15:14
**prepares** 13:19
**preparing** 12:10
**present** 2:21 4:22
**print** 38:8
**printing** 28:5
**prior** 17:9 31:25
**problem** 19:3 25:17
**procedure** 39:6
**process** 6:13 26:12,15
**production** 38:20
**project** 33:17,20
**promenade** 2:14
**protect** 7:23 8:13 17:4
**protected** 8:5
**protecting** 7:14
**protection** 8:6
**protective** 12:23
**provided** 9:21 31:9
**public** 1:22 5:11 36:6 40:23
**pull** 19:10 21:2
**pulled** 19:19
**purpose** 12:4
**pursuant** 1:20 39:6
**put** 7:23 8:12 15:7 21:25
**puts** 15:13

**q**

**question** 3:10 5:18 9:11 10:2 12:3 23:8 26:24
**questionnaire** 8:17 16:12 17:23 26:2,3

**r**

**r** 2:2 36:2
**rated** 16:23
**reached** 25:24 27:11
**read** 11:25 38:6 39:2
**really** 9:13
**reason** 39:13,16 39:19,22 40:3,6 40:9,12,15
**reasons** 25:8 39:8
**rebuild** 12:10 33:11
**rebuilt** 22:15
**recall** 30:13,24 32:15
**receive** 27:12
**received** 6:20 17:23 29:11 30:5,7 31:18
**recollection** 31:10

**reconstruction** 26:10,19,20
**record** 4:3,6,25 25:18 35:4
**recorded** 4:8
**recording** 4:4
**redacted** 27:25
**reflect** 18:24
**regards** 7:15,16 8:5
**related** 16:2 36:15
**relates** 10:17
**remember** 13:15 18:12 26:8 30:15 31:2
**remotely** 4:23
**removed** 24:6
**removing** 33:2,6
**renew** 17:8 24:25
**renewal** 6:13 17:11 28:22 29:19,25 30:8
**renewals** 6:17
**renewed** 34:12
**renovated** 22:12
**renovation** 8:17 13:8 15:7 16:2 16:12 17:25 18:10 20:14,19 20:21 21:8,13 31:24 33:17,20
**repair** 26:7,18
**repairs** 16:20
**repeat** 12:3 18:9
**rephrase** 5:19
**reply** 27:12
**report** 6:20 7:9 12:12,13,16,18 12:20 13:6,12 13:13,16,20,22 14:6,12,20,24 14:25
**reported** 32:12
**reporter** 1:21 4:20 5:7 36:5 37:22
**represent** 10:15
**representative** 24:12
**request** 25:25 31:3,4
**requested** 16:7 16:8 38:6
**requesting** 24:6
**requests** 37:8,12
**require** 8:17
**requirement** 17:7 28:24
**requirements** 7:22 8:12,14 16:23 17:3 30:6 30:8
**requires** 8:21
**reserved** 3:10
**respective** 3:5
**responsibility** 38:6
**retained** 37:22
**returned** 38:12 38:15
**review** 6:15,16 6:17 7:11 8:21 10:25 12:22 15:6 27:5,16 31:24 34:20 38:7
**reviewed** 30:9
**reviewing** 7:12 7:13,21 12:6
**right** 10:6 11:21 15:12 29:6 33:8 34:8
**risk** 34:7
**rl** 37:11
**room** 4:22
**rq** 37:12
**rule** 39:6,7
**rulings** 37:11

**s**

**s** 2:2 37:16
**san** 2:7
**save** 14:6,9,12 14:12,15 30:19
**saved** 14:2 30:21
**says** 13:7 15:2 27:11
**scenario** 26:17
**seal** 38:12
**sealing** 3:6
**second** 13:7 16:9
**see** 6:15 11:21 14:20 18:18 20:13 29:2,16
**send** 38:13
**sending** 28:25
**sent** 7:11 11:15 11:19 12:19 13:5,24 14:7 17:10 24:11 28:2 29:18
**sentence** 12:8 15:2 16:22 33:10
**separate** 20:10
**series** 6:24
**set** 17:7 24:25 25:8 36:21
**several** 6:5 23:2
**shady** 38:21
**shorthand** 1:21 36:5
**show** 19:18 20:22
**shows** 22:11
**sign** 38:6
**signature** 24:21 36:23 38:2,16 40:18
**signed** 3:13,15 38:10,12,15
**significant** 27:13,15 31:21 31:23 33:13
**signs** 8:16

**smoking** 8:16
**solely** 23:14
**sorry** 10:19 11:10 18:16 19:2 20:8 23:7 25:16 26:23 31:5
**sort** 25:20
**south** 5:17
**southeast** 38:18
**southern** 1:4 4:12
**specialist** 34:7
**specific** 14:23 23:22
**spoke** 31:17 32:13
**ss** 36:3
**stamp** 11:22
**stamped** 7:5 37:19
**stand** 20:4
**start** 11:21 12:6 29:10 31:25
**started** 26:10
**state** 1:22 4:24 16:4 17:23 21:6 23:18,22 28:21 32:13,18 36:3,6
**statement** 39:8
**states** 1:2 4:11 22:21,23 25:24 39:7
**station** 6:4
**status** 26:6
**stenographica...** 36:12
**stipulated** 3:4,8 3:12
**stood** 29:19
**store** 9:4
**street** 2:16 4:16
**studs** 32:19,25 33:2,3,6
**subscribed** 40:19
**substance** 39:7
**suite** 2:15
**supervisor** 24:2
**surcharge** 15:12 15:13,23,25
**surcharges** 15:3 15:7
**sure** 7:13 12:23 26:25
**swear** 5:7
**sworn** 3:13,16 5:11 36:10 40:19
**system** 9:8,9,14 9:16 10:5,7 18:14,16,18 19:12,18,25 20:8,11,15,18 20:22 21:3,15 21:17,18,18,18 21:19,24 22:7 22:10 30:21

**t**

**t** 36:2,2 37:16
**tabs** 33:17
**take** 4:5 19:15 19:17 33:18
**taken** 3:17 36:8 36:12
**talk** 16:22 34:20
**talking** 16:13 26:15
**tell** 7:19 11:23
**ten** 11:4,7 16:23 23:2 33:11
**tennessee** 23:10 23:14
**testified** 5:12
**testimony** 36:11 36:12 39:2,7
**texas** 2:7
**thank** 16:10 24:23 34:23,25
**thing** 23:11 25:21
**think** 9:13 31:9 31:14
**third** 25:25
**thousand** 11:4,8
**three** 27:12
**time** 3:10 6:23 7:10 11:11 17:9 17:9 25:6 26:7 26:19 27:6,9 34:15,23 35:5 38:15
**timeline** 27:3
**times** 27:12
**took** 33:20
**top** 24:21
**transcribed** 36:13
**transcript** 38:7 38:13,15 39:2
**trial** 3:11
**trying** 26:23
**turn** 24:16
**type** 7:24 8:14 10:20,22

**u**

**uh** 25:20,20
**unable** 28:23
**under** 18:20 19:12 20:23 21:13 24:22
**undersigned** 39:2
**understand** 5:17,18 9:11 11:9,12 26:13 26:23,25
**understanding** 10:2 23:7
**understood** 18:4
**underwrite** 6:12 23:12 33:16
**underwriter** 5:23 17:18 23:6 34:14

**underwriters** 22:17
**underwriting** 6:10 7:2,11 9:21 10:10,17,18,21 10:22 12:22 15:10 17:21 21:17 23:19 31:8,10 32:8
**unique** 23:4
**unit** 4:7
**united** 1:2 4:11
**update** 31:18
**use** 9:16 13:4 39:9
**used** 11:13
**using** 14:13

**v**

**verbal** 25:19
**veritext** 4:19,21 38:10,20
**veritext.com** 38:18
**versus** 4:10
**video** 4:4,7
**videographer** 2:22 4:2,19 5:6 35:2
**videotaped** 1:18

**w**

**waived** 3:7
**walls** 33:3
**wanted** 9:18,24 18:17 19:11 20:13 31:3
**way** 29:11
**whereof** 36:20
**whitehouse** 6:4
**witness** 5:7,10 36:10,20 37:5 38:18
**work** 5:25 6:5,8 32:2
**working** 8:19
**works** 21:15
**written** 17:19 31:8
**wtc** 1:19 4:15

**x**

**x** 1:6,13 37:4,16

**y**

**yeah** 28:4,10
**yep** 16:11
**york** 1:20,20,22 4:16,16 36:3,4,7

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.